UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY PETTIT,

              Plaintiff,              Case No. 2:16-cv-12811
                                        District Judge David M. Lawson
v.                                 Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 17), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 18) and AFFIRM THE
COMMISSIONER'S DECISION**

I.    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

II.    **REPORT**

       Plaintiff, Kimberly Pettit, brings this action under 42 U.S.C. § 405(g), 42

U.S.C. §§ 1381, 1382(a) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying her applications for disability insurance

(DI) and supplemental security income (SSI) benefits. This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

motion for summary judgment, the Commissioner's cross motion for summary judgment, Plaintiff's reply (DE 19), and the administrative record (DE 15).

## A. Background

Plaintiff filed her applications for DI and SSI benefits on August 5, 2013, alleging that she has been disabled since November 11, 2008, at the age of 28. Plaintiff alleges disability based upon bipolar disorder, depression, and degenerative changes in her back. ALJ Mary S. Connolly entered an unfavorable decision on May 22, 2012, the Appeals Council denied Plaintiff's request for review on July 26, 2013, and Plaintiff's applications were initially denied on November 14, 2013.

Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ"), which was conducted on March 27, 2015. During the hearing, the onset date was amended to September 7, 2014. (R. at 16, 42, 233.)[1] On July 13, 2015, ALJ Dennis M. Matulewicz determined that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff requested review of this decision. On July 1, 2016, the Appeals Council denied Plaintiff's request for review. Thus, the ALJ's decision became the Commissioner's final decision. Plaintiff then timely commenced the instant action on August 1, 2016.

---

[1] This is the date on which Plaintiff was admitted to the hospital after having been involved in a motor vehicle accident. (R. at 350-355.)

## B.     The Administrative Decision[2]

At **Step 1** of the ALJ's decision denying benefits, he determined that Plaintiff has not engaged in substantial gainful activity since September 7, 2014, the amended alleged onset date.  (R. at 19.)  At **Step 2**, the ALJ determined that Plaintiff has the following severe impairments:  obesity, degenerative disc disease of the back, schizophrenia, affective disorder, personality disorder, sleep apnea, bipolar disorder, benign paroxysmal positional vertigo, L1 compression fracture, and fracture of the left leg.  (R. at 19.)  At **Step 3**, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 19-22.)  Prior to **Step 4**, the ALJ determined that Plaintiff had the RFC to perform the exertional limitations of "less than sedentary work," with some additional postural, environmental and non-exertional limitations.  (R. at 23-29.)  At **Step 4**, the ALJ determined that Plaintiff is unable to perform any past relevant work.  (R. at 30.)  At **Step 5**, considering Plaintiff's age, education, work experience, and residual functional capacity (RFC), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 30-31.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**D.    Analysis**

**1.    Clarification of the issue(s) before the Court**

Plaintiff's motion is framed as containing two separate issues:  the ALJ's improper assessment of treating physician Dr. Mehdi's opinion(s) and the ALJ's inaccurate RFC which resulted in an erroneous finding of work at Step 5. (*Compare* DE 17 at 17-22, DE 22-25.)  In the latter argument, Plaintiff specifically contends that the RFC assessment "falls short of including the entirety of Plaintiff's documented limitations."  (DE 17 at 23.)

Initially, I note that, "during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Where the hypothetical to the VE is nearly identical to the ALJ's Step 4 RFC determination (*see* R. at 22-23, 63), the more accurately stated challenge is whether substantial evidence supports the RFC limitations that are the subject of this appeal. In other words, whether intentional or not, Plaintiff's "Step Five argument is a veiled attack on the ALJ's underlying RFC finding." *Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("the ALJ's hypothetical in this case was identical to his RFC assessment."). *See also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

In sum, within both of Plaintiff's arguments, she refers to various physicians' records relating to both physical and mental health issues, as well as some objective testing. As such, the Court construes Plaintiff's arguments as one single challenge with two subparts: the ALJ's treatment of the opinion evidence as to both her *physical* and *mental health* limitations.[3]

---

[3] To be sure, the argument section of Plaintiff's brief makes passing reference to her testimony and other references to "pain." (*See* DE 17 at 18-19, 24-25; R. at 60, 45.) However, the Court does not interpret these references as a developed

## 2.    Consideration of opinion evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, as is the case here, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2), now 20 C.F.R. 404.1527(c)(2)).  However, there is no *per se* rule that requires a written

---

challenge to the ALJ's determinations that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her alleged] symptoms are not credible . . . [,]" or that Plaintiff's testimony "is not totally credible . . . ."  (R. at 27, 29.)

articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§

404.1527(c)(1)-(6), 416.927(c)(1)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F.App'x

216, 222 (6th Cir. 2010). In other words, the regulations do not require "an

exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414

F.App'x 802, 804-805 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2), now 20

C.F.R. § 404.1527(c)(2)).

### a.  Plaintiff's physical limitations

By way of background, the regulations provided for five physical, exertional

job classifications: sedentary, light, medium, heavy and very heavy. 20 C.F.R. §§

404.1567, 416.967. The regulation defines the most restrictive of these categories

as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and
> small tools. Although a sedentary job is defined as one which
> involves sitting, a certain amount of walking and standing is often
> necessary in carrying out job duties. Jobs are sedentary if walking
> and standing are required occasionally and other sedentary criteria are
> met.

20 C.F.R. §§ 404.1567(a), 416.967(a).[4]

---

[4] *See also* 20 C.F.R. §§ 404.1569a(a), 416.969a(a) ("The classification of a
limitation as exertional is related to the United States Department of Labor's
classification of jobs by various exertional levels (sedentary, light, medium, heavy,
and very heavy) in terms of the strength demands for sitting, standing, walking,
lifting, carrying, pushing, and pulling.").

In Plaintiff's case, the ALJ found that her RFC included the exertional limitations of "less than sedentary work," which the ALJ explained as "[s]he can lift 10 pounds maximally, 5 pounds frequently, and 10 pounds occasionally. She can sit 6 hours, stand 2 hours, and walk 2 hours in an 8-hour workday. She requires a sit/stand at will option. She must alternate sit/stand every 15 minutes at will." (R. at 22.) In other words, the assessed exertional RFC is *less than* "sedentary," as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), in that it requires that Plaintiff be permitted to sit/stand every 15 minutes "at will." The ALJ also imposed certain postural and environmental limitations. (R. at 22-29.)[5] In so doing, the ALJ considered multiple medical records, in addition to which he clearly stated that "in light of the claimant's obesity and the combination of her impairments, I have restricted her to sedentary level work." (R. at 25.) Elsewhere, he explained that the restriction of "the limited range of sedentary level with additional limitations" work is intended to accommodate Plaintiff's "impairments and associated symptoms . . . [.]" (R. at 26.)

Plaintiff argues that the ALJ erred in his consideration of the opinion evidence, as the ALJ did not give controlling weight to Dr. Farah Mehdi's opinion and violated the procedural aspect of 20 C.F.R. §§ 404.1527(c), 416.927(c) and/or

---

[5] Postural tasks include "climbing, balancing, stooping, kneeling, crouching and crawling[.]" *McClain v. Comm'r of Soc. Sec.*, 114 F. App'x 724, 726 (6th Cir. 2004).

SSR 96-2p.  (DE 17 at 17-22.)  Relatedly, Plaintiff seems to be asking the Court to look to the opinions of Drs. Wilhelm and Friedman.  (DE 17 at 19-20, 24.)

As illustrated below, the ALJ properly considered the opinion evidence as to Plaintiff's physical limitations:

### i.      Farah Mehdi, M.D. (treating physician)

Plaintiff was treated at Oakview Medical with Shabana Khan, M.D. and Farah Mehdi, M.D. from November 12, 2013 through February 19, 2015.  (R. at 384-454.)  On March 19, 2015, Dr. Mehdi completed a physical RFC questionnaire.  (R. at 455-459.)  Among other things, Dr. Mehdi opined that: Plaintiff was likely to be "off task" 25% or more of a typical workday; Plaintiff's depression, anxiety and chronic back pain make her incapable of even "low stress" jobs; and she was likely to be absent from work more than four days per month. The ALJ assigned Dr. Mehdi's physical RFC assessment "little weight," reasoning that it was "inconsistent with the medical records."  (R. at 28.)

Plaintiff takes issue with this assignment of weight, contending that Dr. Mehdi's opinion is "well supported by objective medical evidence[,]" including the March 18, 2015 lumbar spine CT and MRI (R. at 510-513, 519-522) and Dr. Friedman's April 2, 2015 notes (R. at 501).  (DE 17 at 18-19.)  Plaintiff also contends that Dr. Mehdi's opinion "is not inconsistent with other substantial evidence in the record[,]" such as:  **(a)** Mateen Ahmed, M.D.'s 2013 multiple

diagnoses of obstructive sleep apnea and shortness of breath (R. at 281-302); **(b)**

the complaint of dizzy spells to and an October 23, 2014 vertigo diagnosis by

neurologist Suheb Hasan, M.D. (R. at 356-357); **(c)** positive straight leg raise

(SLR), severe lumbar spine tenderness, and paraspinal muscle spams during the

"course of physical therapy[;]"[6] and **(d)** a December 11, 2014 kyphoplasty

performed by neurosurgeon Jayant Jagannathan, M.D., which did not offer relief

(R. at 465-466, 502; *see also* R. at 469-470).  (DE 17 at 19-20.)[7]

Initially, I note the ALJ's express consideration of sleep apnea, Dr. Hasan's

October 23, 2014 notes, physical therapy records, and the December 11, 2014

kyphoplasty.  (R. at 24, 356-357, 365-375, 379, 380, 469; R. at 25, 299, 298, 301.)

More importantly, as the Commissioner points out, "it is not enough for Plaintiff to

point to evidence that supports a finding of disability or supports the limitations

---

[6] Plaintiff does not provide citations for these examples.  However, based upon earlier citations in her brief, the Court suspects she is referring to the October 21, 2014 "initial evaluation and plan of care" by Preferred Rehab Care, Inc. (R. at 376-379) or notes from any of the other October through December 9, 2014 visits (R. at 365-375) and perhaps even the December 3, 2014 notes from Ateeq K. Rehman, M.D. (R. at 358-359) and/or neurosurgeon Dr. Friedman's notes (R. at 501, 502, 505).  Relatedly, upon its own review of the record, the Court notes the notes from Align Networks, which appear to state that Plaintiff was discharged from or discontinued therapy during December 2014, as she had undergone surgery.  The summary explains that, while Plaintiff exhibited "significant progress in terms of pain," she still had "difficulty bending, lifting and [with] prolonged sitting[.]"  (R. at 380-383.)

[7] Kyphoplasty is an "Injection of bone cement into a compressed vertebra."  Stedman's Medical Dictionary 473850 (Nov. 2014).

imposed by Dr. Mehdi."  (DE 18 at 15.)  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) ("while we recognize the presence of some conflicting evidence in the record, we nevertheless find substantial evidence to support the Secretary's determination that appellant failed to establish disability prior to the expiration of his insured status.").  As the Sixth Circuit has cautioned:

> . . . it must be remembered that the standard on review is to determine if substantial evidence supports the ALJ's conclusion. By definition, this allows for a case in appropriate circumstances to be decided either way on the same record. The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.

*Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

Here, the Court should conclude that the ALJ's opinion gives the explanation contemplated by the regulations.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").  First, the ALJ's explanation that Dr. Mehdi's opinion "is *inconsistent* with the medical records[,]" (R. at 28-29 (emphasis added)), followed by an express reference to Dr. Friedman's March 26, 2015 notes (R. at 502), sets forth clear consideration of the *consistency* factor.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the

more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").[8]

Second, as the Commissioner points out, "the ALJ identified and discussed other evidence throughout the decision that conflicted with Dr. Mehdi's opinion." (DE 18 at 10, 11-12.)  For example, the ALJ referenced unremarkable or normal *portions* of physical examinations by Dr. Mehdi on October 2, 2014 (R. at 397), by Dr. Hasan on October 23, 2014 (R. at 357), by Dr. Jagannathan on October 27, 2014 (R. at 467), by Dr. Khan on November 13, 2014 (R. at 394), and by Dr. Mehdi on January 6, 2015 (R. at 388).  (*See* R. at 24.)  The ALJ also noted Ateeq K. Rehman, M.D.'s December 3, 2014 note that Plaintiff's EMG revealed "no electrodiagnostic evidence of left peroneal nerve neuropathy or radiculopathy." (R. at 24, R. at 360.)  Also, the ALJ expressly acknowledged the December 11, 2014 physical therapy discharge notes that Plaintiff's gross range of motion (ROM) was within functional limits (WFL), she had achieved increased gross strength, and she had "exhibited significant progress in terms of pain, pain free [active range of motion] AROM . . . [.]"  (R. at 24, 380.)  Furthermore, the ALJ

---

[8] True, the parties dispute whether the "mild" diagnostic findings within the March 18, 2015 lumbar spine CT and MRI form the basis of Dr. Mehdi's March 19, 2015 physical RFC form (R. at 455-459).  (R. at 25, 511, 513, 520, 522.)  (*Compare* DE 17 at 18-19, DE 18 at 13-14, DE 19 at 3.)  However, this question does not need to be answered, as the ALJ's basis for discounting Dr. Mehri's report was its inconsistency with the medical records, namely Dr. Friedman's March 26, 2015 examination notes.  (R. at 28-29.)

acknowledged Dr. Friedman's March 26, 2015 assessment that Plaintiff appeared to be neurologically intact, was able to walk on her toes and heels, had symmetrical reflexes, her motor examination showed no focal deficits, and her SLR test was negative.  (R. at 25, 502.)  These various citations to normal or unremarkable findings can *arguably* be characterized as *inconsistent with* at least some *portions* of Dr. Medhi's physical RFC assessment (such as her opinions on Plaintiff's exertional limitations in sitting, standing, walking, lifting or carrying or postural limitations in stooping, crouching or climbing).  (R. at 455-459.)[9]

   In sum, the ALJ clearly considered the consistency factor set forth in 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) in his assignment of "little weight" to Dr. Mehdi's March 19, 2015 physical RFC questionnaire, either expressly by citation to Dr. Friedman's March 26, 2015 notes or implicitly through references elsewhere in his opinion to normal or unremarkable findings.  Moreover, even in assigning "little weight" to Dr. Mehdi's opinion, which assessed multiple exertional and postural limitations, it is important to note that the ALJ's physical RFC *also* contains *multiple* exertional and postural limitations, even if not to the extent assessed by Dr. Mehdi.  I note Plaintiff's contention that the ALJ's RFC "less than sedentary" exertional limitation "does not sufficiently limit the Plaintiff . . . [,]"

_____

[9] In fact, the Court notices on its own review that, during a February 14, 2014 review of symptoms (apparently at Oakview Medical), Plaintiff "denied arthralgia(s) and myalgias[,]" and the musculoskeletal examination documented "no bony or muscular abnormalities[.]"  (R. at 439-440.)

contending that Dr. Mehdi's limitations "are supported by the vast majority of the medical evidence of record . . . ." (*Compare* DE 18 at 14-15, DE 19 at 3-4; R. at 22, 26). Still, for the reasons stated above and below, the Court should disagree with Plaintiff that the ALJ has failed to give "good reasons" to discount Dr. Mehdi's opinion. (DE 17 at 21-22.)

### ii. Phillip Friedman, M.D. (neurosurgeon)

Dr. Friedman treated Plaintiff on three occasions during March and April 2015. At the March 12, 2015 consultation, Dr. Friedman noted that Plaintiff's SLR "results in complaints of pain on top of the hip on the right[,]" and he opined it was "essential to obtain postoperative imaging including a CT scan of the lumbar spine and an MRI scan." (R. at 504-506.) On March 26, 2015, Dr. Friedman noted Plaintiff's denial of improvement following kyphoplasty, but also noted: "Neurologically, she appears to be intact. She is able to walk on her toes and heels. Reflexes are symmetrical. Motor examination shows no focal deficits. Straight leg raising is negative." (R. at 502-503.) Finally, on April 2, 2016, Dr. Friedman noted that Plaintiff had returned to work "with restrictions," but has "gone home several times and has gone to emergency room because of severe pain[,]" and further noted that Plaintiff's SLR and "knee-to-chest on the right side" each "accentuate pain at the base." In addition, he opined that Plaintiff appeared

"to be disabled due to her mechanical low back pain[,]" and he referred Plaintiff for a trial of physical therapy and EMG. (R. at 501.)

The ALJ expressly considered Dr. Friedman's notes from the latter two of these visits, at which point the ALJ introduced him as a "neurosurgeon." (R. at 25.) As such, the ALJ considered the specialization factor. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Thereafter, the ALJ discounted Dr. Mehdi's physical RFC form on the basis that it was inconsistent with Dr. Friedman's March 26, 2015 progress note. (R. at 28-29, 502.) Thus, the ALJ took the consistency factor into consideration. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). In addition, while not assigning a specific weight to Dr. Friedman's April 2, 2016 opinion regarding disability, the ALJ pointed out that such an opinion concerns an issue "reserved to the Commissioner . . . ." (R. at 29, 501.) This is correct. *See* 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3), 404.1527(d), 416.927(d).

Plaintiff cites Dr. Friedman's April 2, 2016 notes as *supportive of* Dr. Mehdi's limitations, specifically those concerning: sometimes needing to take unscheduled breaks; likely to be "off task" 25% or more; and standing/walking less

than two hours total in an 8-hour working day,[10] and Plaintiff cites Dr. Friedman's same notes as *illustrative of* Plaintiff's inability to "perform the basic demands of unskilled sedentary work." (DE 17 at 19, 24; R. at 457-458, 501). Plaintiff also cites Dr. Friedman's March 26, 2015 notes as *consistent with* Dr. Mehdi's opinion. (DE 17 at 20, R. at 502.)

However, even if Dr. Friedman's April 2, 2016 notes illustrate "Plaintiff's constant treatment, need for strong pain killing prescriptions, and failed attempt to return to work . . . [,]" or that she "had to go home early several times because of pain[,]" (DE 17 at 19, 24), and even if Dr. Friedman's March 26, 2015 notes acknowledge that Plaintiff's kyphoplasty did not yield improvement in her condition (DE 17 at 20), Plaintiff's citations to portions of Dr. Friedman's records that are consistent with or supportive of Dr. Mehdi's opinion do not, alone, show an error in the ALJ's consideration of Dr. Friedman's opinions. As noted earlier, it is not enough to point to conflicting evidence. *See Siterlet*, 823 F.2d at 920, *Crisp*, 790 F.2d at 453 n.4. Furthermore, by discounting Dr. Mehdi's opinion as inconsistent with Dr. Friedman's March 26, 2015 notes, the ALJ was applying favorable treatment to at least some of Dr. Friedman's examination results from that date. (R. at 28-29, 502.) For example, in at least three places within the Step

---

[10] Plaintiff's motion states that Dr. Mehdi assessed a "need for leg elevation[.]" (DE 17 at 9, 19.) In fact, Dr. Mehdi's form answers "no" to the question, "With prolonged sitting, should your patient's leg(s) be elevated?" (R. at 458.)

4 RFC discussion, the ALJ expressly referred to Dr. Friedman's March 26, 2015 assessment that Plaintiff appeared to be neurologically intact. (R. at 25, 27, 28-29.) This is akin to crediting some *portions* of a treating physician's opinion while discounting others. *See*, *e.g.*, *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008) ("While crediting Dr. West's treatment relationship with Kidd, and Dr. West's diagnosis in some respects, . . . the ALJ discounted Dr. West's conclusory opinion that Kidd was disabled. The ALJ supported his conclusion by noting his perception of the inconsistency of Dr. West's ultimate opinion with the diagnoses of treating *specialists* like Drs. Kahn and El–Naggar.") (emphasis in original).

### iii.    Kenneth G. Wilhelm, M.D.

Plaintiff was seen by Dr. Wilhelm on March 5, 2015 for a chief complaint of back pain, stemming from a September 2014 injury. Dr. Wilhelm described Plaintiff's activity status as "modified activity," "office work only," with "no prolonged standing/walking sitting than tolerated." (R. at 516-517.) Plaintiff characterizes this record as among the substantial evidence that she "is unable to perform the basic demands of unskilled sedentary work." (DE 17 at 24.)

However, the ALJ gave this opinion "little weight," because Dr. Wilhelm did not provide a "function-by-function analysis[.]" (R. at 29.) Plaintiff's citation to Dr. Wilhelm's opinion, without any illustration of how the ALJ's discounting of

same was erroneous, does not illustrate that Dr. Wilhelm's opinion should have been given any greater weight. More importantly, "modified activity" and "office work only" do not suggest an *inability* to "perform the basic demands of unskilled sedentary work[,]" nor has Plaintiff shown how Dr. Wilhelm's assessment of "no prolonged standing/walking sitting than tolerated" is unaccommodated by the ALJ's "less than sedentary work" RFC, with its various exertional limitations, including its sit/stand option.

### b.    Non-exertional, mental health limitations

At Step 2, the ALJ recognized that Plaintiff's severe mental impairments include schizophrenia, affective disorder, personality disorder, and bipolar disorder. (R. at 19.) The ALJ found that Plaintiff's RFC included a multitude of non-exertional, mental health limitations:

> She is limited to simple unskilled work with a SVP rating of 1 or 2. She is limited to work that has minimal interpersonal interaction, contact, or discussion with co-workers. She is limited to routine work that does not require changes or adaptations in work settings or duties more than once per mouth. She is limited to work requiring less than occasional contact with the general public. She is limited to jobs without production quotas mandating a specific number of pieces per hour or with a down line co-worker depending on the claimant's productivity.

(R. at 23.) As explained later in the decision, these limitations were to accommodate Plaintiff's "exacerbations of abnormal mental symptoms . . . ." (R. at 26.)

### i. Laurence Domino, M.D. (state agency consultant)

On November 13, 2013, state agency consultant Laurence Domino, M.D. completed a psychiatric review technique (PRT) form, within which he determined that Plaintiff had "moderate" limitations in the "Paragraph B" criteria. (R. at 98-99, 111-12.) At Step 3, the ALJ assigned this form "little weight," as it was "not supported by the record[,]" which seemingly resulted in the ALJ's conclusion that Plaintiff had only "mild restriction" in activities of daily living. (R. at 21.)

In addition, Dr. Domino performed a mental RFC assessment, within which he concluded that Plaintiff is able to "understand and recall simple instructions[,]" "carry out and complete simple tasks on a routine basis[,]" "have casual contact with the general public and coworkers, and accept constructive criticism from supervisors[,]" "respond to changes if introduced gradually[,]" and "understand, recall, carry out and complete simple tasks on a routine basis[,]" and found Plaintiff to be "partially credible." (R. at 101-103, R. at 114-116.) Within the RFC discussion, the ALJ assigned the state agency consultant's opinion "some weight," as it "provided a reasonable basis [for the] conclusions." Still, the ALJ "accounted for possible exacerbations in [Plaintiff's] severe abnormal mental symptoms" by assessing "a more restrictive mental [RFC]." (R. at 28.)

### ii. Hugh D. Bray, Ph.D. (consultative psychological examiner)

Dr. Bray performed an adult mental status evaluation on October 29, 2013.

(R. at 303-309.)  He diagnosed bipolar disorder (depressed type, moderate) and

paranoid personality disorder, assessed Plaintiff's global assessment of functioning

(G.A.F.) as 55, and described her prognosis as "guarded."  (R. at 307.)  In addition,

he provided a "discussion of the four work-related mental activities[,]" including

his opinion that Plaintiff's "mental ability to withstand stress and pressure

associated with day to day work activities is *significantly impaired*."  (R. at 308

(emphasis added).)  The ALJ assigned Dr. Bray's opinion "little weight," because

he "provided no exact mental restrictions[,]" although he also assigned "great

weight" to the G.A.F. score "since it is consistent with the examination findings."

(R. at 29.)

### iii.    Plaintiff's challenge to the RFC's non-exertional, mental health limitations

Plaintiff contends that she has "*significant* mental limitations caused by her

bipolar disorder[,]" in support of which she points to Bray's CE report and to Dr.

Mehdi's physical RFC questionnaire (as evidence of Plaintiff's mental

impairments and chronic pain's work-preclusive effect upon her productivity).

(DE 17 at 24-25 (emphasis added), 308, 456.)  However, this single-paragraph

argument is unavailing.  To begin, it does not acknowledge the ALJ's discounted

reliance upon state agency Dr. Domino's opinion – a discounting which inured in

Plaintiff's favor by assessing a "more restrictive" mental RFC (R. at 28).  More

importantly, while Plaintiff asks the Court to adopt Dr. Bray's mental status evaluation that Plaintiff is "significantly impaired" or Dr. Mehdi's physical RFC assessment that Plaintiff's mental impairments and chronic pain would have a work-preclusive effect upon her productivity, Plaintiff's single-paragraph argument does not show how the myriad non-exertional, mental health limitations already contained within the ALJ's RFC are insufficient. As such, she has not met the burden required of her to overturn the ALJ's Step 4 RFC determination. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . [.]").

### E.    Conclusion

As discussed in further detail above, I conclude that the ALJ properly assessed the opinion evidence as to Plaintiff's physical and non-exertional, mental health restrictions; Plaintiff has not shown otherwise; and the RFC should be affirmed. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 17), **GRANT** Defendant's motion for summary judgment (DE 18), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 14, 2017          s/Anthony P. Patti
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on August 14, 2017, electronically and/or by U.S. Mail.

                                s/Michael Williams
                                Case Manager for the
                                Honorable Anthony P. Patti